MARIE A. PETTI *v.* BALANCE ROCK ASSOCIATES
(5070)

HULL, DALY and BIELUCH, Js.

354

Submitted on briefs May 14—decision released September 15, 1987

*David E. Schancupp* filed a brief for the appellant (defendant).

*Edward R. Giacci* filed a brief for the appellee (plaintiff).

BIELUCH, J. The defendant appeals from the trial court's judgment rendered for the plaintiff in this action brought under General Statutes § 47-88d[1] for reimbursement for moving and relocation expenses. The

---

[1] General Statutes § 47-88d provides: "REIMBURSEMENT FOR MOVING AND RELOCATION EXPENSES. Any declarant of a conversion condominium shall pay moving and relocation expenses to each household which does not purchase its dwelling unit and does not have an adjusted gross income for federal income tax purposes of more than twenty-one thousand dollars, if unmarried, or twenty-five thousand dollars jointly with spouse, if married, in an amount equal to the amount charged for two months' rent for such dwelling unit at the time the conversion was declared or one thousand dollars, whichever is greater."

defendant submits the following claims for our consideration: (1) whether the trial court erred in finding that the defendant was the declarant of Balance Rock Condominiums; (2) whether the trial court erred in applying the provisions of § 47-88d where the plaintiff's occupancy of the converted rental unit was terminated by virtue of a summary process judgment based on nonpayment of rent; (3) whether the trial court erred in refusing to admit into evidence the defendant's exhibit regarding costs incurred in the summary process action, and in failing to apply the amount reflected in said exhibit as a setoff to the plaintiff's claim; and (4) whether the trial court erred in awarding attorney's fees to the plaintiff pursuant to General Statutes § 52-251a.[2] We find no error.

The trial court could reasonably have found the following facts. This matter was commenced on June 6, 1984, as a small claims action in which the plaintiff sought to recover from the defendant Balance Rock Associates[3] reimbursement for moving and relocation expenses pursuant to § 47-88d. The defendant maintained a residential apartment dwelling known as Balance Rock Apartments in Seymour. Pursuant to a declaration of condominium conversion, the apartment dwelling was converted into a condominium. The plaintiff, a tenant who chose not to purchase a condomin-

[2] General Statutes § 52-251a provides: "COSTS, ATTORNEY'S FEES ON SMALL CLAIMS MATTER TRANSFERRED TO REGULAR DOCKET. Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the superior court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court."

[3] In the original complaint filed in connection with her small claims action, the plaintiff lists two defendants: "Balance Rock Associates, c/o Mark David Associates" and "Balance Rock Assoc., Limited Partnership." "Balance Rock Associates" is named as the sole defendant in the plaintiff's substitute complaint filed after this action had been transferred to the regular docket of the Superior Court.

ium unit, sought reimbursement under the statute following the conversion of the apartment complex in 1983.

The defendant moved to dismiss and, subsequently, to transfer the small claims action to the regular docket for defense and right of appeal. The case was not dismissed,[4] but was later transferred to the regular docket of the Superior Court. Practice Book § 572.[5] This action was referred to a state trial referee for hearing. After trial, the court issued an oral decision and rendered judgment for the plaintiff. The court found that the defendant was the declarant of Balance Rock Condominiums within the meaning of § 47-88d and awarded the plaintiff damages in the amount of $1000 as provided for in the statute. The court also awarded the plaintiff interest in the amount of $191.67, together with attorney's fees of $250. The defendant thereupon filed this appeal.

[4] On July 19, 1984, the defendant filed a motion to dismiss the small claims action for failure to make proper service. Although this motion is not relevant to the issues on appeal, we observe that the record is unclear as to whether it was addressed by the trial court. It is evident, however, that this matter was resolved in the small claims court without dismissal of the action.

[5] Practice Book § 572 provides in relevant part: "A case duly entered on the small claims docket of a geographical area or housing session court location shall be transferred to the regular docket of the superior court or to the regular housing docket, respectively, if the following conditions are met:

"(1) The defendant, or the plaintiff if the defendant has filed a counterclaim, shall file a motion to transfer the case to the regular docket. This motion must be filed on or before the answer date.

"(2) The motion to transfer must be accompanied by (a) a counterclaim in an amount greater than the jurisdiction of the small claims court; or (b) an affidavit stating that a good defense exists to the claim and setting forth with specificity the nature of the defense, or stating that the case has been properly claimed for trial by jury.

"(3) The moving party shall comply with such terms as are fixed by the court, which shall at least provide for not less than the amount of an entry fee of a case in the superior court."

In its first claim, the defendant challenges the sufficiency of the evidence to support the trial court's factual finding that it was the declarant of Balance Rock Condominiums under § 47-88d. Specifically, the defendant maintains that the evidence was not sufficient to prove that a relationship existed between itself and Mark David Associates, an undisputed declarant of Balance Rock Condominiums, which would establish and support the court's finding that Mark David Associates and Balance Rock Associates were "one and the same party, however designated . . . ."

Our review of the trial court's factual findings is limited solely to the determination of whether they are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, they are clearly erroneous. Practice Book § 4061; *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Fortier* v. *Laviero,* 10 Conn. App. 181, 183, 522 A.2d 313 (1987); *Cook* v. *Nye,* 9 Conn. App. 221, 224, 518 A.2d 77 (1986). The function of an appellate court is to review, and not retry, the proceedings of the trial court. " 'We cannot retry the facts or pass upon the credibility of the witnesses.' *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975) . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 220; *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44–45, 521 A.2d 221 (1987); *Cook* v. *Nye,* supra.

"As a corollary of our limited scope of review, in an appeal based on a claim of evidentiary insufficiency regarding a factual finding we do not examine the record to determine whether the judge or trier of fact could have made a finding other than the one made. Instead, we first determine whether there is evidence to support the finding. If not, the finding is clearly erroneous. Even if there is evidence to support it, however, a find-

ing is clearly erroneous if 'in view of the evidence and pleadings in the whole record [this court] is left with the definite and firm conviction that a mistake has been committed.' *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985)." *Buddenhagen* v. *Luque,* supra, 45.

We have carefully reviewed the record, trial transcript and exhibits in this appeal. We are convinced that the trial court's factual finding that the defendant was the declarant of Balance Rock Condominiums within the meaning of § 47-88d is firmly supported by the evidence.

The defendant's second claim is that the trial court erred in applying the provisions of § 47-88d where the plaintiff's occupancy of the converted unit had been terminated by a summary process judgment based on nonpayment of rent. In the proceedings below, the defendant raised this claim as a special defense. The defendant now argues that the trial court's decision cannot stand because the court did not reveal whether its judgment for the plaintiff reflected a lack of proof regarding the defense or a denial of the claim on its merits.[6] The defendant also maintains that it was never the intent of the legislature to permit recovery for relocation expenses pursuant to § 47-88d where the occupancy of the converted unit is terminated for nonpayment of rent.

Even if the trial court's judgment did not reveal the basis for its decision, there is no merit to the defendant's claim that it may have been based on a lack of proof regarding the circumstances of the plaintiff's termination of her occupancy of the converted unit. Our review of the record reveals that the trial court took judicial notice of the judgment rendered against the

---

[6] We note that the defendant could have moved for an articulation of the trial court's judgment to clarify the basis of its decision. See Practice Book § 4051.

plaintiff in the summary process action based upon non-payment of rent. See *State* v. *Bunkley,* 202 Conn. 629, 648, 522 A.2d 795 (1987); *Guerriero* v. *Galasso,* 144 Conn. 600, 605, 136 A.2d 497 (1957). We, therefore, need only consider the defendant's claim that the judgment of the trial court may have been a reflection of its disagreement with the defendant's assertion that § 47-88d prohibits a recovery by a tenant whose occupancy has been terminated by an eviction.

The defendant argues that it was not the intent of the legislature that § 47-88d apply to a circumstance where the party seeking reimbursement was evicted from the converted unit for nonpayment of rent. In seeking to discern legislative intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to legislative practice and policy, and to judicial construction. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987); *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 572, 522 A.2d 763 (1987); *Gill* v. *Petrazzuoli Bros., Inc.,* 10 Conn. App. 22, 30, 521 A.2d 212 (1987).

We begin our analysis with the language of the statute. Section 47-88d provides: "Any declarant of a conversion condominium shall pay moving and relocation expenses to each household which does not purchase its dwelling unit and does not have an adjusted gross income . . . of more than twenty-one thousand dollars, if unmarried, or twenty-five thousand dollars jointly with spouse, if married . . . ." This language, which sets out the eligibility requirements for reimbursement under the statute, makes no mention of circumstances which would disqualify an otherwise eligible household. It is, therefore, not apparent on the face of the statute whether the legislature intended that tenants who are evicted for nonpayment of rent following the conversion of their units are eligible for

reimbursement. Finding no intent revealed in the words of the statute, we normally turn to its legislative history to reveal the intent of the legislature. In this instance, however, the defendant cites no legislative history regarding § 47-88d which expresses the intent of the legislature concerning the applicability of that section to tenants evicted for nonpayment of rent.

The intent of the legislature, which we find to be one permitting reimbursement even where the former tenant has been evicted for failure to pay rent, is discerned through an examination of the policy underlying the provisions of § 47-88d. The statute, which is included in the Condominium Act, General Statutes §§ 47-68a through 47-90c, is part of an overall statutory scheme to ease the burden upon nonpurchasing tenants caused by the conversion of their rental apartments to condominium units. Section 47-88d provides that certain households electing not to purchase a converted unit may be reimbursed by the declarant of the condominium conversion for moving and relocation expenses resulting from the nonpurchase of a condominium unit. The defendant, found to be the declarant by the trial court, asks us to hold that when a household otherwise forced to move because of the conversion has been evicted for nonpayment of rent, the provisions of § 47-88d do not apply.

Because the language of the statute does not clearly indicate a legislative intent to foreclose such households from the reimbursement provisions of the statute, and because there is no legislative history specifically stating the intent of the legislature to do so, we are reluctant to limit the eligibility requirements of § 47-88d to tenants who have not been evicted for nonpayment of rent. Section 47-88d is remedial in nature. Such statutes are to be liberally construed to advance their remedy. We will therefore construe its provisions broadly

and in favor of the persons who are to benefit from its existence. See *Pullen* v. *Otis Elevator Co.,* 292 F. Sup. 715 (N.D. Ga. 1968).

We note the distinction between the landlord's right to evict a tenant for nonpayment of rent and the tenant's right to reimbursement under § 47-88d. If a tenant chooses not to purchase his rental unit after it has been converted to a condominium unit, the responsibility for payment of rent under the terms of the lease, oral or written, between the landlord and the tenant does not cease. The landlord's right to institute a summary process action against a tenant in arrears on rent payments is in no way affected by the tenant's right to reimbursement under § 47-88d. Both the landlord and the tenant have a right to redress which is independent of the other's remedy; the landlord has the right to payments due under the terms of the lease, and the tenant has the right to reimbursement under the remedial provisions of the statute. The two remedies are separate and distinct. By way of illustration, we note that § 47-88b (g) provides: "No eviction proceedings shall be brought against any of the occupants resident in any building or group of buildings converted to condominium ownership . . . within the term of any existing lease or within the one hundred eighty-day period provided under subsection (b), whichever is later, for failure to purchase or any other reasons applicable to termination of tenancy *other than nonpayment of rent* or similar justifiable reasons ordinary to landlord rights where a lease exists assuring quiet enjoyment." (Emphasis added.)

We therefore find within the parameters of the policy underlying the statute our conclusion that the reimbursement provisions of § 47-88d are separate from a landlord's right to institute a summary process action for nonpayment of rent. The statutory obligation of reimbursement under § 47-88d prevails where the con-

version precedes the eviction for nonpayment of rent. Viewed in this light, we conclude that the trial court did not err in holding that the plaintiff, a tenant of a converted condominium who chose not to purchase a unit, was entitled to reimbursement under § 47-88d despite her eviction for failure to pay rent after the conversion was declared.

The defendant's third claim is that the court erred in refusing to admit into evidence the defendant's bill for legal services and expenses incurred in the summary process action against the plaintiff, and in failing to apply the amount reflected in said statement as a setoff to the plaintiff's claim. The law of setoff is governed by General Statutes § 52-139. The relevant portion of that statute provides: "(a) In any action brought for the recovery of a debt, if there are *mutual debts* between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other." (Emphasis added.) A condition precedent to the application of § 52-139 is that the defendant's claim arise from a debt due by the plaintiff. See *Savings Bank of New London* v. *Santaniello,* 130 Conn. 206, 211, 33 A.2d 126 (1943). It is the defendant's burden to demonstrate its right of setoff by affirmatively and adequately alleging such a claim in the pleadings. Practice Book § 168; *Peters Production, Inc.* v. *Dawson,* 182 Conn. 526, 528, 438 A.2d 747 (1980).

The defendant has not affirmatively alleged the existence of any debt due and owing it from the plaintiff. A debt is defined as an "unconditional and legally enforceable obligation for the payment of money." Ballentine's Law Dictionary (3d Ed). The expenses which the defendant sought to recover by way of setoff were the attorney's fees and expenses incurred in the earlier summary process action. "The rule in Connecticut is that absent contractual or statutory authoriza-

tion, each party must pay its own attorney's fees." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* 193 Conn. 135, 140, 475 A.2d 305 (1984). The defendant does not allege the existence of any agreement or obligation on behalf of the plaintiff to pay the fees and expenses it seeks to recover by way of setoff. It merely alleges: "If the plaintiff is entitled to recover, defendant is entitled to a setoff for the expenses incurred by it as a result of the *delict* of the plaintiff." (Emphasis added.) The trial court, therefore, did not err in refusing to admit into evidence the bill paid by the defendant for legal services and expenses incurred in the eviction action, and properly refused to consider such amount as a setoff against the plaintiff's claim.

The defendant's final claim is that the trial court erred in awarding attorney's fees to the plaintiff pursuant to General Statutes § 52-251a. This statute provides in relevant part: "Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the superior court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court." This language allows the court discretion in whether attorney's fees should be awarded. The case before us is clearly one contemplated by the provisions of the statute. The defendant claims that the plaintiff is not entitled to attorney's fees because her attorney had filed his appearance and was engaged in the prosecution of her claim prior to the transfer of the case to the regular docket. We find no such limitation in the language of § 52-251a, nor has the defendant pointed to any legislative history supporting its position. The defendant has proffered no compelling reason to warrant judicial expansion of the statutory requirements of § 52-251a. "Accordingly, it is unquestioned that the trial court was entitled to award to the plaintiff, as the prevailing party, both costs and reasonable

counsel fees for services performed during the pendency of the suit." *Moffitt* v. *Horrigan,* 37 Conn. Sup. 873, 875, 441 A.2d 207 (1982). We find that the trial court did not abuse its discretion in awarding the plaintiff attorney's fees.

There is no error.

In this opinion the other judges concurred.